IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


TIM WAYNE WALLACE,                              09-CV-463-BR

      Plaintiff,

                                      OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendant.


MERRILL SCHNEIDER
Schneider Law Offices
14415 SE Stark
P.O. Box 16310
Portland, OR 97292
(503) 255-9092

      Attorney for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**NANCY A. MISHALANIE**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3619

                Attorneys for Defendant


**BROWN, Judge.**

Plaintiff Tim Wayne Wallace seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Wallace's protective application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act respectively.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


2 - OPINION AND ORDER

### ADMINISTRATIVE HISTORY

Wallace filed applications for DIB and SSI on October 26, 2005.  Tr. 3-5, 162.[1]  His applications were denied initially and on reconsideration.  Tr. 3,4, 21-25, 27-29.  An Administrative Law Judge (ALJ) held a hearing on April 28, 2008.  Tr. 51-81.  At the hearing, Wallace was not represented by an attorney.  Tr. 53-56.  Wallace and lay witness Adam Pointer testified at the hearing.  Tr. 51-81.

The ALJ issued an opinion on August 20, 2008, and found Wallace is not disabled and, therefore, is not entitled to benefits.  Tr. 9-17.  That decision became the final decision of the Commissioner on February 20, 2009, when the Appeals Council denied Wallace's request for review.  Tr. 18-20.

### BACKGROUND

Wallace was thirty-nine years old at the time of the hearing before the ALJ.  Tr. 82.  Wallace completed his education through the twelfth grade.  Tr. 103.  He has performed past work as a manufacturing-assembly worker, order clerk, salesperson, kitchen helper, construction worker, and warehouse worker.  Tr. 11, 100. Wallace alleges a disability onset date of August 15, 2003. Tr. 82, 94.

---

[1] Citations to the official transcript of record filed by the Commissioner on October 28, 2009, are referred to as "Tr."

In 1996 Wallace suffered severe right foot and ankle injuries in a sledding accident that necessitated surgical correction.  Tr. 61, 203, 207, 209.  Wallace has suffered chronic right-foot pain since the accident and has been diagnosed with post-traumatic degenerative joint disease and osteoarthritis  in his lower right extremity with severe flattening and pronation of the right foot.  Tr. 195-96, 209-24.  Wallace alleges he is disabled due to pain in his right foot and ankle that makes it difficult to stand or to walk.  He also alleges he is disabled due to difficulty in concentrating because of his pain medication.  Tr. 63, 99, 159-60.

Except when noted, Wallace does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 20-22.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

5 - OPINION AND ORDER

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart

6 - OPINION AND ORDER

P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in

7 - OPINION AND ORDER

the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden
shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The
Commissioner may satisfy this burden through the testimony of a
VE or by reference to the Medical-Vocational Guidelines set forth
in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.
If the Commissioner meets this burden, the claimant is not
disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Wallace has not engaged in
substantial gainful activity since his alleged onset date of
August 15, 2003.  Tr. 11.

At Step Two, the ALJ found Wallace has the severe
impairments of post-traumatic osteoarthritis and degenerative
joint disease of the right foot.  Tr. 11.

At Step Three, the ALJ found Wallace "has the residual
functional capacity to perform the full range of sedentary work."
Tr. 12.

At Step Four, the ALJ concluded Wallace is unable to perform
any of his past relevant work because each of Wallace's past
occupations exceeded the sedentary level of exertion.  Tr. 16.

At Step Five, the ALJ concluded Wallace has a sufficient RFC to perform jobs that exist in significant numbers in the national economy based on the Medical-Vocational Guidelines (Grids) at 20 C.F.R. Part 404, Subpart P, Appendix 2.  Tr. 16.

## DISCUSSION

Wallace contends the ALJ erred by (1) improperly discrediting Wallace's subjective symptom testimony; (2) failing to provide legally sufficient reasons for discrediting the opinions of Wallace's treating physician, Andrew Robie, M.D.; (3) failing to properly consider Wallace's nonexertional limitations; and (4) improperly concluding at Step Five that Wallace is capable of performing jobs that exist in significant numbers in the national economy.

## I.    Wallace's Credibility.

Wallace contends the ALJ erred because he failed to provide clear and convincing reasons for rejecting Wallace's subjective symptom testimony.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th

9 - OPINION AND ORDER

Cir. 1986).   The claimant, however, need not produce objective

medical evidence of the actual symptoms or their severity.

*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the

claimant's pain testimony only if he provides clear and

convincing reasons for doing so.   *Parra v. Astrue,* 481 F.3d 742,

750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)).   General assertions that the claimant's

testimony is not credible are insufficient.   *Id*.   The ALJ must

identify "what testimony is not credible and what evidence

undermines the claimant's complaints."   *Id*. (quoting *Lester*, 81

F.3d at 834).

Here Wallace testified at the hearing that he is unable to

work because of the debilitating pain in his foot that is severe

enough at times to prevent him from leaving his home and because

his medication affects his ability to concentrate.   Tr. 63-74.

The ALJ concluded even though Wallace's "medically determinable

impairment could reasonably be expected to produce the alleged

symptoms . . . [, his] statements concerning the intensity,

persistence, and limiting effects of these symptoms are not

entirely credible."   Tr. 12-13.

The ALJ found Wallace's testimony was not entirely credible

on the following grounds:   (1) Wallace's stated abilities belie

10 - OPINION AND ORDER

his claims of total disability, (2) Wallace's work history demonstrates he is not totally disabled, and (3) Wallace's lack of regular treatment suggests his symptoms are not as severe as he described them at the hearing. Tr. 13-15. The ALJ did not entirely discredit Wallace's testimony but instead found Wallace's medically determinable impairments limit him to sedentary work only. Tr. 13.

### A.   Wallace's limitations.

In his Fatigue Questionnaire, Wallace stated: "If I'm sitting down I'm OK but if I am standing or walking for a long period of time I have problems." Tr. 129. Wallace also stated he usually needs only an hour lunch break to rest his foot. Tr. 129. According to Wallace, he is able to walk about a mile on a good day, to stand for two hours without a rest, to walk for two hours without a rest, to sit for eight hours without a rest, and to lift 50 pounds occasionally. Tr. 130-31. In his Pain Questionnaire and in his Adult Function Report, Wallace similarly reported he is able to walk between one-half and one and a half miles. Tr. 126, 135. Wallace also stated in his Pain Questionnaire that the pain in his foot is caused by walking or carrying heavy objects on a regular basis. Tr. 133. In a consultation with Kim Webster, M.D., Wallace reported he has the ability to walk about a mile, to sit without restriction, to stand for one to two hours at a time, and to lift about 100

pounds.  Tr. 193.  At that time, Wallace reported working 16-32 hours a week as a warehouseman.  Tr. 193.

Wallace reported his activities of daily living include cooking for himself daily, cleaning his house, doing laundry, and shopping for food on a weekly basis.  Tr. 130.  He stated he does not need help with household chores.  Tr. 130.  Wallace also stated twice that his typical day includes going to work, going to the gym to work out, fixing himself dinner, bathing, and going to bed.  Tr. 121, 131.  Wallace stated he works out at the gym six days a week.  Tr. 126.

Thus, the ALJ, based on substantial evidence in the record, found Wallace's stated capabilities are inconsistent with his testimony that he is unable to work.  The ALJ, therefore, concluded Wallace is capable of performing sedentary work, which is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

Wallace did not challenge this aspect of the ALJ's credibility determination.

12 - OPINION AND ORDER

**B.    Wallace's work history.**

The ALJ also concluded aspects of Wallace's work history suggest he is not as limited as he alleges.  Tr. 13-14.  The ALJ noted Wallace was able to work on a regular and sustained basis after his accident in 1996 and until 2003.  Tr. 13-14.  Wallace testified he lost his job in August 2003 because his employer went out of business rather than because he could not meet the demands of his position.  Tr. 13, 59.  Wallace further testified he was able to work after August 2003, but he could not perform strenuous work such as moving vending machines because of pain in his foot.  Tr. 13, 60, 148-50.  The ALJ noted Wallace has recently been training to become a medical transcriptionist and spends much of his day practicing typing and searching for work on his computer.  Tr. 13, 71.  The ALJ concluded these facts undermined Wallace's testimony that he is completely disabled.

Wallace asserts these facts do not show that he is not disabled or that he exaggerated his symptoms.  For example, he contends the ALJ should not discredit his testimony merely because he is training for gainful employment.  The record reflects, however, the ALJ only relied on these facts when he determined Wallace's testimony was not credible to the extent that Wallace asserted he is in so much pain that he cannot perform any work.

Although Wallace contends other bases asserted by the ALJ are not sufficient grounds for discrediting Wallace's testimony (*e.g.,* Wallace's treatment history), the Court concludes the above-discussed grounds provided by the ALJ as bases for discrediting Wallace's testimony constitute clear and convincing reasons supported by substantial evidence in the record for doing so. The Court, therefore, need not address Wallace's remaining arguments on this issue.

In summary, the Court concludes on this record that the ALJ did not err when he rejected Wallace's testimony as to the intensity, persistence, and limiting effects of his impairments because the ALJ provided legally sufficient reasons supported by the record for doing so.

**II.   Opinion of Dr. Robie.**

Wallace contends the ALJ improperly discredited the opinion of Dr. Robie, his treating physician.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear

14 - OPINION AND ORDER

and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**A.    Dr. Robie.**

Dr. Robie treated Wallace on several occasions in 2006 and 2007.  Tr. 209-20.  Dr. Robie diagnosed Wallace with post-traumatic degenerative joint disease with chronic pain in his right foot.  Tr. 209.  On April 8, 2008, Dr. Robie stated in a letter to the ALJ:

> I have cared for Mr. Wallace as his primary
> care physician since May of 2006.  He suffers
> from chronic right foot pain due to
> post-traumatic degenerative joint disease
> caused by an injury a number of years ago.
> His condition causes him constant pain which
> has been alleviated somewhat but not
> completely controlled with medications.  He

15 - OPINION AND ORDER

> reports to me that he is unable to bear
> weight on his right foot for a prolonged
> period of time.  Also very significant is the
> mental and emotional impact caused by his
> ongoing pain as manifested by decreased
> ability to concentrate and irritability which
> at times interferes with intrapersonal
> relationships.

Tr. 209.  Dr. Robie did not otherwise offer an opinion as to

Wallace's ability to work or as to Wallace's specific functional

limitations arising from his impairments.

**B.    ALJ's Decision**.

The ALJ did not give any weight to Dr. Robie's statement

that Wallace's pain is not well-managed by medication and that

Wallace suffers side-effects from pain and medication such as a

"decreased ability to concentrate and irritability which at times

interferes with intrapersonal relationships."  Tr. 15-16.  The

ALJ specifically pointed to Dr. Robie's treatment notes as

undermining Dr. Robie's statement that Wallace's pain is not

completely controlled by medication and that Wallace suffers from

significant lapses in concentration and irritability.

**C.    Analysis**.

Wallace contends the ALJ erred because he did not provide

legally sufficient reasons for discrediting the opinions of

Dr. Robie.

The ALJ's decision not to give any weight to Dr. Robie's

opinion that Wallace's pain is not completely controlled by

medication is supported by the record.  As the ALJ noted,

16 - OPINION AND ORDER

Dr. Robie's records reflect Wallace's condition stabilized on medications.  As Wallace points out, however, a conclusion that Wallace is "stable" does not necessarily contradict Dr. Robie's conclusion.  Nevertheless, the record clearly reflects Wallace's medications control his pain.  In his notes from February 19, 2008, Dr. Robie notes Wallace is not only stable on medications, but he is "[h]appy with [his] current level of pain relief," and is "staying relatively active."  Tr. 215.  Dr. Robie also noted Wallace reported he was experiencing "significantly decreased" pain levels, was "satisfied with [his] current regimen[,] and [is] hesitant to try new meds."  Tr. 215.  On November 19, 2007, Dr. Robie reported Wallace was doing relatively well on his pain medication.  Tr. 217.  On September 9, 2007, Dr. Robie again noted Wallace was so satisfied with his medications that he did not want to change his regimen.  Tr. 219.  Nurse Practitioner Bruce Marks also reported Wallace's pain was relatively well-controlled by medication.  Tr. 234-35.  Moreover, Dr. Robie's notes from June 2, 2006, reflect Wallace would likely be "functional" with adequate pain control.  Tr. 214.

With respect to Dr. Robie's opinion that Wallace suffers from decreased concentration and irritability, the ALJ again pointed to several of Dr. Robie's treatment notes that suggest those issues are, in fact, not significant.  Tr. 15-16.  On June 4, 2007, Dr. Robie noted Wallace reported his "family

17 - OPINION AND ORDER

noticed improved mood [and] decreased irritability at a recent gathering which [Wallace] attributes to the meds." Tr. 222. On September 9, 2007, Dr. Robie reported Wallace's medications "provide enough pain control to improve concentration and social interactions." Tr. 219. In addition to improving his concentration and irritability, the record also reflects Wallace denied any side effects from his medications on several occasions. Tr. 132, 134, 215, 217, 230.

The Court notes Dr. Robie did not opine that Wallace is disabled, is unable to work certain jobs or to perform certain functions, or should be restricted from work or training. The record reflects Dr. Robie's treatment notes indicate Wallace's pain, though constant, is well-managed by his medications, and Wallace does not suffer significant reductions in concentration or increases in irritability while on medication.

On this record, therefore, the Court concludes the ALJ did not err when he rejected Dr. Robie's opinion that Wallace's pain, decreased ability to concentrate, and irritability are significant limitations because the ALJ provided legally sufficient reasons supported by the record for doing so.

**III. Wallace's Nonexertional Limitations.**

Wallace also contends the ALJ erred when he rejected Dr. Robie's opinion that Wallace has nonexertional limitations such as a decreased ability to concentrate and irritability. The

18 - OPINION AND ORDER

Court, however, already has concluded the ALJ did not err when he
rejected that portion of Dr. Robie's opinions and need not
address the issue again.

Wallace also contends the ALJ did not give any weight to
Wallace's testimony that he is unable to leave his home at times
due to pain in his right foot.  Again, the Court already has
concluded the ALJ did not err when he found Wallace's testimony
not credible as it relates to his statements about the intensity
and persistence of his pain.  In addition, the Court notes each
of the times Wallace states he could not leave his home due to
pain occurred in 2005, which is before Wallace began taking pain
medication prescribed by Dr. Robie in early 2006 that, as noted,
achieved adequate pain control.  *See* Tr. 63, 66, 99, 146-48, 155,
158-60, 171.  Moreover, the record also reflects Wallace was
working during that period at a job that required him to be on
his feet, which Wallace maintains exacerbates his pain.  Tr. 63,
99, 146-48, 155.  In any event, the ALJ's restriction of Wallace
to sedentary work takes into consideration Wallace's limited
ability to stand, to walk, or to bear significant weight.

The opinion of Dr. Webster also supports the ALJ's
determination that Wallace does not have nonexertional
limitations resulting from the impairments of his foot.  On
December 7, 2005, Dr. Webster examined Wallace and concluded he
had only the following exertional limitations:

19 - OPINION AND ORDER

> I would limit his standing and walking to
> less than two hours.  There would be no
> objective evidence that would limit his
> ability to sit.  I think a cane would be a
> reasonable choice at this point to limit
> further damage to that ankle and possibly a
> brace would be reasonable.  Because of that
> bony exostosis, I would limit carrying to
> probably less than 10 pounds occasionally and
> frequently.  If he were stationary, I would
> probably see that he could lift 10 pounds
> occasionally and 25 pounds frequently.
> Because of that bony exostosis on the right
> ankle, I think probably climbing, kneeling,
> balancing, any position that would require
> extensive flexion/extension in that ankle
> would be prohibited.

Tr. 196.  In addition, Linda L. Jensen, M.D., a nonexamining

physician, reviewed Wallace's file in January 2006 and concluded

the record did not support a finding of nonexertional

limitations.  Tr. 198-205.  Dr. Jensen found Wallace could

perform a full range of sedentary work.  Tr. 204-05.

Accordingly, the Court concludes the ALJ did not err when he

concluded Wallace does not have nonexertional limitations or an

inability to leave his home because the ALJ provided legally

sufficient reasons supported by substantial evidence in the

record for doing so.

## IV.  Step Five Determination.

Finally, Wallace contends the ALJ's determination at Step

Five that Wallace can perform "jobs that exist in significant

numbers in the national economy" was in error because the ALJ did

not take the testimony of a Vocational Expert (VE) at the

20 - OPINION AND ORDER

hearing.  Instead the ALJ relied solely on the grids of the
Medical-Vocational Guidelines even though, according to Wallace,
he has nonexertional limitations as indicated by Dr. Robie, which
make the ALJ's application of Medical-Vocational Rule 201.28
improper.

With respect to the ALJ's reliance on the Grids in lieu of
the testimony of a VE, the Ninth Circuit has held:

> The grids are an administrative tool the
> Secretary may rely on when considering
> claimants with substantially uniform levels
> of impairment.  They may be used, however,
> "only when the grids accurately and
> completely describe the claimant's abilities
> and limitations."  When a claimant's
> non-exertional limitations are "sufficiently
> severe" so as to significantly limit the
> range of work permitted by the claimant's
> exertional limitations, the grids are
> inapplicable.  In such instances, the
> Secretary must take the testimony of a
> vocational expert, and identify specific jobs
> within the claimant's capabilities.  Thus,
> the grids will be inappropriate where the
> predicate for using the grids—the ability to
> perform a full range of either medium, light
> or sedentary activities—is not present.

*Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)(citations
and footnote omitted).

As noted, the Court has found the ALJ did not err when he
rejected Dr. Robie's opinion that Wallace has nonexertional
limitations and when the ALJ concluded Wallace is capable of the
full range of sedentary work.  Thus, the AlJ's application of the
Grids was appropriate.

21 - OPINION AND ORDER

**<u>CONCLUSION</u>**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 9th day of August, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge